MAX BEYTIN, Plaintiff, *v.* IDA SIMON, REUBEN TASHMA and ROSE TASHMA, Impleaded with Others, Defendants.

County Court, Sullivan County, March 31, 1937.

*Isadore Rothenberg,* for the plaintiff.

*Ellsworth Baker,* for the defendants Simon and Tashma.

COOKE, J. This is an action to foreclose a bond and mortgage. It is dated November 11, 1933. It was drawn and executed in pursuance of a contract for the sale of real estate which was executed on or about June 24, 1933. The purchase price was $8,000, to be paid as follows: $2,500 by taking the premises subject to a first mortgage for that amount, payable $250 annually for two years and the balance of $2,000 at the end of the third year, with interest. Five thousand, five hundred dollars was to be paid by second party executing and delivering a purchase-money bond and mortgage for that sum. The principal of that mortgage was to be paid $400 five years after date and $400 annually thereafter for three years and the balance in 1942. The first mortgage was assigned to one Abraham Feldman and extended as agreed. It is claimed that the plaintiff, in order to procure the assignment and extension, gave additional security for the payment of the moneys thereby secured by a mortgage upon other real estate.

Upon the delivery of the deed on or about November 11, 1933, the purchase-money bond and mortgage were given for $5,500, as agreed.

The first mortgage was dated April 10, 1924, recorded April 16, 1924, in the Sullivan county clerk's office in Mortgage book 194 at page 281. It was originally given as security for $2,497. It was extended by agreement dated July 3, 1933. Two hundred and fifty dollars of principal became due August 15, 1934, $250 on August 15, 1935, and the balance on August 15, 1936.

The plaintiff in August, 1936, took an assignment of the first bond and mortgage and procured a satisfaction of the mortgage given as collateral security. It was stipulated herein that the interest on the first mortgage was tendered and refused on September 14, 1936.

This second mortgage contained the following provisions:

" This mortgage is subject and subordinate to a first mortgage given to secure the payment of twenty-five hundred ($2500.00) Dollars and interest, recorded in the office of the County Clerk of the County of Sullivan in liber      of mortgages, page      now a prior lien on said premises, or to any renewals, extensions or new mortgage in like amount.

" And it is hereby expressly agreed, that should any default be made in the payment of any installment of principal, or of the interest on the said prior mortgage, and should such interest remain unpaid and in arrears for the space of 30 days, or should any suit be commenced to foreclose the said prior mortgage, then the amount secured by this mortgage and the accompanying bond shall become and be due and payable at any time thereafter at the option of the owner or holder of this mortgage.

" And it is hereby further expressly agreed, that should any default be made in the payment of any installment of principal, or of the interest on the said prior mortgage, the holder of this mortgage may pay such interest, and the amount so paid, with legal interest thereon from the time of such payment, may be added to the indebtedness secured by this mortgage and the accompanying bond, and shall be deemed to be secured by this mortgage and said bond, and may be collected thereunder."

The main contention here centers around the agreement between the parties that should any default be made in the payment of any installment of principal on the prior mortgage then the amount secured by this second mortgage and accompanying bond shall become due and payable.

Section 1077-g of the Civil Practice Act says that the provisions of sections 1077-a, 1077-b, 1077-c, 1077-d, 1077-e and 1077-f shall

not apply to any mortgage dated on or after July 1, 1932, nor to any obligations in connection with or secured by any such mortgages. This legislation became effective in August, 1933.

Section 1077-a, foreclosure of principal defaults suspended, says in part: " During the period of the emergency as defined in section ten hundred seventy-seven-g, and notwithstanding any inconsistent provisions of the Civil Practice Act or of any other general or special law, or of any agreement, bond or mortgage, no action or proceeding for the foreclosure of a mortgage upon real property, or any interest therein, nor any foreclosure under article seventeen of the Real Property Law, shall be maintainable, solely for or on account of a default in the payment of principal secured by such mortgage or solely in the payment of any installment or amortization of principal secured by such mortgage, although the payment of such principal or installment or amortization of principal may be due by the terms of such agreement, bond or mortgage, provided, however, that where a default authorizing foreclosure shall have occurred under the terms of the bond or mortgage or other agreement, other than the non-payment of principal or an installment or amortization of principal, and any grace period therein specified shall have expired, then the rights and remedies of the holder of the mortgage shall not be affected by this act."

Section 1077-d, waiver against public policy, says: " Any covenant or agreement or understanding in or in connection with or collateral to any mortgage whereby a mortgagor waives or agrees to waive the protection intended to be afforded to him by sections ten hundred seventy-seven-a, ten hundred seventy-seven-b, and ten hundred seventy-seven-cc shall be deemed to be void as against the public policy and be wholly unenforcible." (Added by Laws of 1933, chap. 793, in effect August 26, 1933, and see § 1077-g, amd. by Laws of 1935, chap. 318, in effect April 8, 1935, adding " and ten hundred seventy-seven-cc.")

In *Manufacturers National Bank* v. *Toole* (152 Misc. 724; affd., 242 App. Div. 893) it is stated: " It may be argued with force here that the plaintiff is seeking to accomplish indirectly what he cannot accomplish directly. While the original indebtedness was contracted for at the same time that the mortgage was given, it is not solely secured by such mortgage. These two elements should exist in order to bar action. Moreover, it is apparent that the defendants are possessed of personal property in excess of the obligation sought to be enforced, and orderly procedure would contemplate the sale of such property before resorting to the real estate. It may be that the enforcement of payment from the sale of real

estate may be resisted when it is determined that the real estate is the sole security for the obligation."

In that case a note was given prior to July 1, 1932. It was secured by a real estate mortgage and a chattel mortgage.

In 242 Appellate Division, 893, by which the judgment and order in the foregoing case was affirmed, the court says: " The complaint alleged a cause of action on a promissory note. The answer pleaded section 1077-b of the Civil Practice Act, the moratorium statute. Simultaneously with the giving of the note defendants gave a real estate mortgage and a chattel mortgage in separate documents. The real estate mortgage not being the ' sole ' security for the debt, the statute did not apply. (152 Misc. 724.) "

From this we may infer that the statute would be applicable in case the real estate mortgage was the sole security for the debt, even though by renewals the note was dated November 20, 1933, upon which the action was brought. The original note was dated July 22, 1931.

There can be no doubt here that in so far as the first mortgage is concerned this statute applies.

The plaintiff claims that these defendants do not come within the contemplation of a mortgagor as set forth in section 1077-d. That they are strangers and reside without the protection of this statute is his contention. However, in plaintiff's brief he states it is quite possible that the defendants might claim the benefit of the provisions of these sections in an action to foreclose the first mortgage.

By section 1077-g, among other things, it states that these sections shall not apply to any mortgage dated on or after July 1, 1932. This first mortgage being dated before, it would seem, came within the intention of this statute, no matter who became the owner of the equity of redemption. Otherwise a person who purchased property, at any time after this act took effect, upon which property there was a mortgage given prior to July 1, 1932, would be compelled to make the payments of principal even though the mortgage was given prior to that date.

It seems, therefore, that whoever is now the owner of the equity of redemption stands in the same place as a mortgagor as contemplated by section 1077-d.

If the owner of this first mortgage cannot foreclose it by reason of default in the payment of principal, can that be made a basis for the foreclosure of the second mortgage taking into consideration the provisions of section 1077-d?

If he could, then he can enforce payments of principal on a mortgage dated prior to July 1, 1932, or bring an action to foreclose

another mortgage with this default as the basis thereof and deny to him the protection intended to be afforded to him by this statute.

There cannot be much dispute about the principle of law that a junior mortgagee had the right to take an assignment of the first mortgage and become subrogated to the rights of the first mortgagee. It is true, no doubt, when this transaction was closed, reliance was placed upon the fact that certain payments were required to be made upon the first mortgage; payments upon the second mortgage may have been determined by taking into consideration the payments to be made upon the first mortgage, and that the first mortgage would be gradually reduced, giving the owner of the second mortgage better security as the amount due on the first mortgage became less; yet many people holding first mortgages with principal coming due each year who had relied upon those payments, have had the payments thereof suspended and have had to wait. Moreover, when this transaction was closed and the second mortgage given, this legislation was in effect.

Defendants claim that they had a party ready, able and willing to take an assignment of the first mortgage and to extend the time of payment of the principal. If the position taken by the plaintiff here be the proper one, then that would have been of no avail to these defendants, for this plaintiff could have compelled payments to be made upon the first mortgage or declare default upon the second mortgage. Then he could compel them to do the very thing which the statute said they did not have to do. Plaintiff is now the owner of both mortgages upon this property. It does not seem that he can enforce payment upon a mortgage, payment of which has been suspended by the Legislature. These two mortgages must be read together to determine the agreement of the parties. The statute suspends payment of principal on the one so that there is not a legal actionable default.

This court has read with interest the recent case of *Lawyers Trust Co.* v. *Kingsway Realty & Mortgage Corp.* (162 Misc. 13), wherein it states: " No one can deny the fact that this and companion legislation have been a boon to distressed mortgagors. Tens of thousands of homes or other realty investments of thrifty, deserving people have been saved from the auction block and their gratitude should know no bounds. However, like all public questions, this one very distinctly has another side. Not every mortgage or mortgage certificate is owned by either a soulless corporation or a heartless Shylock. For generations they have been the favored investment of widows, orphans, elderly couples of slender means, estates, hospitals, schools, savings banks and others who bear not the slightest resemblance to ' money changers

in the temple ' or ' economic royalists.' Upon them this legislation operates most harshly. In the first place, it is a mistake to assume that every mortgagor is a poor, humble and deserving home owner. Droves of them are the most unblushing rogues and chiselers in the land. Today they are in the saddle and dictate practically their own terms to the luckless mortgagees, irrespective of their ability to pay. In the second place, the virtual freezing of all mortgage capital has given impetus to a new racket of immense proportions. Every owner of a mortgage or mortgage certificate is continuously being solicited by mail and advertisement to part with his investment at a mere fraction of its actual value. All too many are unable to hold on until a better day has dawned and, as a consequence, the scalpers have harvested a goodly crop. Finally, it is nothing short of confiscation to peg all mortgage investments at fixed amounts and decree that they must remain there indefinitely. Buildings deteriorate at the rate of from two to five per cent per annum, depending upon age and construction. It is safe to assert that, except in those unusual cases where the value of the land has appreciated, the actual security under most mortgages is today only eighty to ninety per cent of what it was in 1933. Manifestly this cannot continue unless all constitutional guaranties are to be discarded. (*Klinke* v. *Samuels*, 264 N. Y. 144.) "

However, this legislation is still in effect. Many have believed it wise and proper to continue it over another period. Some do not think so. Our duty is plain, however, and that is to follow the law as we believe it is. In so far as these statutes are concerned we are not weighing the equities of the respective parties. That is not our privilege. How do the sections of the moratorium act apply to this situation, if they do apply, is our problem.

It would seem that there has not been an actionable default in the first mortgage; therefore, it cannot be the basis of a default in the second mortgage. In addition section 1077-d says there cannot be a waiver of this protection.

In view of all the facts herein, it seems that the complaint should be dismissed.

Order may be agreed upon or settled on two days' notice. The question of costs will be determined when the order is signed.